## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DUMITRU VASU, | ) | CASE NO. 5:18-cv-1889 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| | ) | |
| COMBI PACKAGING SYSTEMS | ) | |
| LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the parties' cross-motions for judgment on the administrative record and summary judgment. (Doc. Nos. 40, 41.) The motions are briefed[1] and ripe for resolution.

## I.      BACKGROUND

The unfortunate facts in this case are before this Court for the second time. Plaintiff, Dumitru Vasu ("Vasu"), is the son of the late Victor Vasu, and the sole beneficiary of his father's life insurance policies. (Doc. No. 39-1, administrative record ("AR") at 517[2].) In March 2016,

---

[1] Defendant's motion is fully briefed. (*See* Doc. Nos. 40, 47, 48.) Plaintiff did not file a reply brief in support of his motion. (*See* Doc. Nos. 41, 45.)

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system. The parties filed two different versions of the administrative record. Combi filed an administrative record that is identical to the administrative record filed in *Vasu v. Am. United Life Ins. Co.*, 247 F. Supp. 3d 867, 874–75 (N.D. Ohio 2017)— a case with nearly identical facts that Vasu brought in this Court in 2016. (*See* Doc. No. 39-1.) Vasu filed "Plaintiff's Administrative Record" that contains an additional 80 pages of documentation not found in either defendant's administrative record or the record filed in Vasu's previous lawsuit. (*See* Doc. No. 42-1.) On March 19, 2020, the Court filed an order requiring Vasu to file a memorandum explaining, among other things, "which version of the administrative record (Doc. No. 39-1 *or* Doc. No. 42-1) [was] properly before the Court…." (Doc. No. 50 at 1786.) Vasu never responded to the order. Nevertheless, the Court has determined that Doc. No. 39-1 was the administrative record that was considered by the claims administrator and, therefore, that is record the Court will consider in evaluating Vasu's denial-of-benefits claim.

Vasu filed suit in this Court against American United Life Insurance Company ("AUL"), seeking to overturn AUL's decision to deny his claim for life insurance benefits after his father's passing. *See Vasu v. Am. United Life Ins. Co.*, 247 F. Supp. 3d 867 (N.D. Ohio 2017) (hereinafter sometimes referred to as "*Vasu I*"). In granting AUL's motion for judgment on the administrative record, this Court held that, under the terms of the life insurance policies, Victor Vasu "was not insured, or eligible for insurance, on the date of his death" and, therefore, AUL's denial of benefits was not arbitrary and capricious. *Id.* at 874. In the present case (hereinafter sometimes referred to as *Vasu II),* Vasu now seeks payment of the same benefits, under the same life insurance policies, this time hoping to recover from Victor's former employer, Combi Packaging Systems, LLC ("Combi"). A brief recitation of the facts is necessary to frame the current motions.

### a. The Policies

In December 2007, Combi contracted with AUL to provide life insurance to Combi employees beginning January 1, 2008 (the "Application Agreement"). (AR at 747–52.) Under the terms of the Application Agreement between Combi and AUL, Combi acknowledged that AUL was the "claims administrator" and, as such, only AUL had the authority to "determine insurability, the effective date of [i]nsurance coverage, [and] the amount of [i]nsurance coverage," and only AUL was authorized to "interpret and administer any of the requirements set forth in the group policy, and to amend the policy…." (*Id.* at 751.) Additionally, benefits under the group policy would only be paid "if AUL decide[d] in its discretion the applicant [was] entitled to them…." (*Id.*) For its part, Combi agreed to "provide standard administrative services to [e]mployees" in connection with the group policy. (*Id.*) These administrative functions included, among other things, deducting insurance premiums from employees' salaries, maintaining eligibility records, maintaining beneficiary designations, and informing employees of any right to

continue or convert a group policy to an individual policy and to provide employees with the necessary conversion forms. (*Id.*)

AUL offered Combi employees two types of life insurance policies: Basic Term Life ("Basic Life") and Voluntary Term Life ("Voluntary Life") (collectively, the "Policies"). (*Id.* at 748.) Under the Basic Life policy, Combi employees were eligible for a guaranteed $25,000 death benefit without providing evidence of insurability. (AR at 409–10.) Combi paid the premiums for Basic Life coverage for its employees. (*Id.* at 412, 440.) To be eligible, employees were required to maintain full-time employment status, defined as capable of working 30 hours or more per week. (*Id.* at 410, 413.) Employees who were unable to maintain full-time status due to sickness or injury, could maintain Basic Life coverage for up to nine months if Combi continued paying the required premiums during that time period ("Continuation of Insurance"). (*Id.* at 417.) If an employee failed to return to full-time work prior to the expiration of the Continuation of Insurance period, Basic Life coverage terminated unless: (1) the insured qualified for, and was granted a Waiver of Premium for Total Disability ("Waiver of Premium")[3] or (2) the insured converted the group policy to an individual life insurance policy ("Conversion Privilege"). (*Id.*) If AUL denied an employee's Waiver of Premium request, the insured could elect to exercise his Conversion Privilege to convert the group policy to an individual policy. (*Id.* at 420.) To exercise the Conversion Privilege, the insured was required to submit a written application and pay the first premium within 31 days following the latter of the termination of insurance or notification of the right to convert coverage. (*Id.* at 422.)

Eligibility for Voluntary Life coverage was—like Basic Life—predicated on full-time employment status. (*Id.* at 450, 459.) The Voluntary Life policy also included provisions related

---

[3] Pursuant to the Waiver of Premium benefit, AUL agreed to waive further premium payments for an employee's Basic Life insurance if he becomes totally disabled before age 60. (AR at 419.)

3

to Continuation of Insurance, Waiver of Premium, and Conversion Privilege. (*Id.* at 467, 468, 471.) Unlike Basic Life, however, the insured (rather than Combi) paid the premiums for Voluntary Life. (*Id.* at 459, 503.) If Voluntary Life coverage ceased due to, among other things, the denial of a Waiver of Premium claim, the insured could exercise his Conversion Privilege by submitting a conversion application and paying the first premium within 31 days of: (1) termination of insurance; (2) notification from AUL of the denial of the insured's Waiver of Premium claim; or (3) conversion notification from Combi, whichever was later. (*Id.* 471.)

> **b. Victor Vasu's Disability and Death**

Victor Vasu was a full-time Combi employee until July 11, 2013, when he suffered a stroke and was unable to return to work. (*Id.* at 509, 843.) Combi did not terminate Victor Vasu following his stroke, however, because Victor hoped he would return to work. (*Id.* at 739.) As of the date of his disability, Victor had $25,000 in Basic Life and $110,000 in Voluntary Life coverage. (*Id.* at 561.) Vasu was the sole beneficiary under his father's life insurance policies. (*Id.* at 517.) Five months after his stroke, in December 2013, Victor filed a Waiver of Premium application. (*Id.* at 841.) In a letter dated December 24, 2013, AUL informed Victor that he was not eligible for the Waiver of Premium benefit because he "ceased working after [his] 60th birthday." (*Id.* at 584.) The letter further advised Victor that he "may be eligible to exercise [his] Conversion, Portability or Continuation of Coverage privilege to maintain life insurance by paying premiums directly to AUL." (*Id.* at 586.) The letter went on, "if you are interested in pursuing these opportunities, you must return the enclosed Application to Continue/Port or Convert Group Insurance within 31 days of the date of this letter." (*Id.* at 586–87.) The letter also provided Victor Vasu with a telephone number to call if he had "any questions regarding the Application to Continue/Port or Convert Group Insurance…." (*Id.* at 587.)

4

On the same date, AUL notified Combi that they denied Victor Vasu's Waiver of Premium application because he did not qualify for the benefit, and advised Combi that AUL "provided [Victor] a detailed letter of explanation, including appeal and conversion procedures." (*Id.* at 589.) Victor Vasu died on June 7, 2014. There is no evidence that he applied for his Conversion Privilege (*id.* at 515), and the parties agree that he did not. (*see* Doc. Nos. 40 at 857, 41 at 1060)

Combi completed a proof of death claim form on Victor Vasu's behalf on June 9, 2014, for $25,000 in Basic Life and $110,000 in Voluntary Life coverage. (*Id.* at 509–10.) AUL denied the claim because Victor "did not elect to continue his life insurance coverage under the Conversion Privilege or Continuation of Insurance provisions" after his Waiver of Premium application was denied on December 24, 2013. (*Id.* at 554.) Following AUL's denial of benefits, Vasu filed *Vasu I*—a breach of contract complaint against AUL. The action was filed in state court and removed to this Court based on federal question jurisdiction pursuant to ERISA. *Vasu*, 247 F. Supp. 3d at 871. In *Vasu I*, the Court granted AUL's motion for judgment on the administrative record holding that AUL's denial of benefits was not arbitrary and capricious because Victor Vasu was not insured on the date of his death. Specifically, the Court held:

> There is no dispute that Victor Vasu did not convert the [Basic Life or Voluntary Life coverages]. Under the terms of the Plan, Victor Vasu was not insured, or eligible for insurance, on the date of his death. Accordingly, the Court concludes that AUL's denial of benefits was not arbitrary and capricious because its determination was consistent with the provisions of the Plan.

*Id.* at 874.

### c.  Vasu's Claims Against Combi

On July 12, 2018, Vasu brought the instant action against Combi—Victor Vasu's employer—in state court alleging breach of contract and seeking declaratory judgment. On August 15, 2018, Combi removed the action to this Court on the basis of federal question jurisdiction, alleging that the Policies are governed by ERISA. (Doc. No. 1 ¶ 1.) Vasu filed a motion to remand,

arguing that the Policies are not subject to ERISA. Vasu's argument was based on a June 12, 2017 letter he received from Combi's counsel stating that the Voluntary Life policy "was not an ERISA program[.]" (*See* Doc. No. 6. at 38–39.) This Court denied Vasu's motion because, despite Combi's counsel's assertion, "ERISA completely preempts Vasu's state law claims…." (Doc. No. 12 at 236.) In addition, the Court held that, even though Combi did not contribute to the Voluntary Life policy, "Combi's contribution to the Basic Life [was] enough to nullify application of [ERISA's] safe harbor [provision]." (*Id.* at 234 n.2.) On March 21, 2019, Vasu filed an amended complaint asserting four causes of action against Combi: (1) to "recover [ERISA] benefits due" under the Policies pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) retaliation pursuant to 29 U.S.C. § 1140; (3) declaratory judgment pursuant to 28 U.S.C. § 2201(a); and (4) failure to supply requested ERISA documents pursuant to 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B). (Doc. No. 22, first amended complaint ["FAC"] at 295–97.) Vasu voluntarily dismissed his retaliation claim (claim 2) and, thus, only claims one, three, and four remain. Both parties now move for judgment on the administrative record on claims one and three and for summary judgment on claim four. (*See* Doc. Nos. 40, 41.) Vasu also renews his motion to remand.[4] (Doc. No. 41 at 1053–56.)

## II.     STANDARD OF REVIEW

### a.  Standard of Review for Motions for Judgment on the Administrative Record

District courts adjudicate the merits of ERISA denial-of-benefits claims based solely on the record that was before the claims administrator and not pursuant to the summary judgment procedures set forth in Fed. R. Civ. P. 56. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998)). The decision of an ERISA claims administrator to deny benefits is reviewed *de novo* unless the benefits

---

[4] As discussed *infra*, Vasu also asserted a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) for the first time in his motion for summary judgment. (*See* Doc. No. 41 at 1063.)

plan grants the claims administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). When such discretionary authority is granted to an administrator, "'the highly deferential arbitrary and capricious standard of review is appropriate.'" *Castor v. AT&T Umbrella Benefit Plan No. 3*, 728 F. App'x 457, 463 (6th Cir. 2018) (quoting *Kalish v. Liberty Mut. Life Assurance Co. of Bos.*, 419 F.3d 501, 506 (6th Cir. 2005)). Here, there is no dispute that the Policies grant discretionary authority to AUL as the claims administrator. (*See* AR at 751.) Accordingly, in *Vasu I*, AUL's decision to deny Vasu's claim was reviewed under the "arbitrary and capricious" standard.

### b.  Summary Judgment Standard

While ERISA denial-of-benefits claims are properly adjudicated on the administrative record, other ERISA claims, such a breach of fiduciary duty under 29 U.S.C. § 1132(a)(3)(B), are rightly decided pursuant to a motion for summary judgment. *See Tregoning v. Am. Cmty. Mut. Ins. Co.*, 12 F.3d 79, 80 (6th Cir. 1993) (affirming the district court's order granting summary judgment to the defendant on plaintiff's 29 U.S.C. § 1132(a)(3)(B) claim). When a party brings a properly-supported summary judgment motion, it must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). A party asserting that a fact cannot be, or is genuinely, disputed, must support the assertion by "(A) citing to particular parts of materials in the record …; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact

exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determining whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must then point to specific facts showing that there is a genuine issue for trial. *Liberty Lobby, Inc.*, 477 U.S. at 250.

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting his or her claims. *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001)). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) (citing, among authority, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quotation marks and citation omitted).

Under this standard, the mere existence of some factual dispute will not frustrate an

otherwise proper summary judgment motion. *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 247–48) (quotation marks omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

## III.    ANALYSIS

### a.    Vasu's Renewed Motion to Remand.

This Court has twice determined that the Polices are part of an ERISA employee benefit plan. In *Vasu I*, this Court noted that "[t]here is no dispute that the [Policies constitute] an ERISA employee benefit plan" and that Vasu's "state law claims are preempted by ERISA." *Vasu*, 247 F. Supp. 3d at 874–75,

In his motion to remand previously filed in this case (*Vasu II*), Vasu argued that ERISA is not applicable based on a letter he received from Combi's counsel stating that the Voluntary Life plan was "[n]ot an ERISA Program" because Combi did not contribute to the policy, thus invoking ERISA's safe harbor provision. (*See* Doc. No. 6 at 38–39.) The Court rejected that argument, noting that an email from Combi's counsel does not control the Court's interpretation of the Policies. Instead, the Court applied the Sixth Circuit's three-step test to determine that the Policies were, in fact, part of an ERISA plan. (Doc. No. 12 at 235.)

In his current motion, Vasu asserts a new theory as to why the Policies are not subject to ERISA—Combi's Section 125 Basic Plan Document states that certain plans "fall outside of ERISA[.]" (Doc. No. 41 at 1053.) In opposition, Combi claims that the Polices at issue are "a separate, standalone benefit plan and not part of the [Section] 125 Plan." (Doc. No. 45 at 1628.) Whether or not the Policies are part of Combi's Section 125 plan does not change the Court's

9

analysis of whether the Policies are subject to ERISA. It is the employee benefits plan itself that determines ERISA applicability, regardless of whether or not the benefit plan is offered as part of a Section 125 plan. Vasu appears to conflate a Section 125 plan with the benefit plans offered *within* the 125 plan.

Even assuming *arguendo* that the Policies are part of the Section 125 plan, a Section 125 cafeteria plan "does not constitute, in itself, a separate employee welfare benefit plan within the meaning of ERISA's statutory definition of this term." *Padilla v. UNUM Provident*, No. CIV 03-1444 MCA/WDS, 2005 WL 8157318, at *7 (D. N.M. Aug. 29, 2005) (internal quotation marks and citation omitted). Instead, Section 125 of the Internal Revenue Code—which relates to cafeteria plans—permits employers to establish certain tax-favored arrangements for their employees. *See* 26 U.S.C. § 125.

As the name implies, a cafeteria plan simply offers eligible employees a choice between taking their entire salary in the form of cash in their paycheck or designating a portion of their salary to be held in a pre-tax account that can be spent on qualifying healthcare, dependent care, or insurance-related expenses. *McLemore v. Regions Bank*, Nos. 3:08-cv-021, 3:08-cv-1003, 2010 WL 1010092, at *1 (M.D. Tenn. Mar. 18, 2010); *see Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 396 (6th Cir. 1997) ("A cafeteria plan permits employees to set aside pre-tax dollars to purchase certain 'qualified benefits.'"). The amount of money an employee contributes to a tax-advantaged account (such as a health savings account, flexible spending account, or the like) is subtracted from the employee's gross income for tax purposes. In Advisory Opinion 96-12A, the Department of Labor made clear that a cafeteria plan, itself, does not "provide[] any enumerated benefits" that would constitute an ERISA plan. But the health and welfare benefit programs being paid through the Section 125 plan may be covered under ERISA.

U.S. Dep't of Labor, Opinion Letter on Applicability of ERISA to Cafeteria Plans (July 17, 1996), Opinion No. 96-12A, 1996 WL 423472 (1996).

Vasu notes that Combi's Section 125 plan "describes … three different types of benefit[] [plans] that were available to employees: (1) the 'Premium Only Plan,' (2) the 'Medical Flexible Spending Arrangement,' and (3) the 'Dependent Care Flexible Spending Arrangement.'" (Doc. No. 41 at 1053.) Concluding that the Policies "were not part of either a Medical FSA or a Dependent Case FSA[,]" Vasu deduces that the Policies must fall "under the Premium Only Plan."[5] (*Id.*) And, according to the Section 125 Basic Plan document, "[t]he Premium Only Plan … [is] not subject to the requirements of ERISA." (*Id.*) Based on this, Vasu concludes that Combi intended to exclude the Policies from ERISA. (*Id.* at 1054.) But again, Vasu assumes that because the Premium Only Plan is excluded from ERISA, so too must the Policies within the Premium Only Plan be excluded. He is incorrect.

A Premium Only Plan, or "POP", is "a cafeteria plan that offers as its sole benefit an election between cash (for example, salary) and payment of the employee share of the employer-provided accident and health insurance premium (excludible from the employee's gross income …)." Employee Benefits—Cafeteria Plans, 72 Fed. Reg. 43946 (proposed Aug. 6, 2007). Indeed, Combi's Section 125 Basic Plan Document states, "[t]he purpose of the Premium Only Plan is to provide Eligible Employees with a Choice between: (a) payment of Qualifying Premium Expenses; and (b) cash compensation." (Doc. No. 40-2 at 981.) As with cafeteria plans generally, it is possible for Combi's Premium Only Plan to be excluded from ERISA, even though the employee welfare programs paid through the plan may constitute an employee benefit plan for

---

[5] Combi asserts that the Policies are not part of the Section 125 plan. (Doc. No. 45 at 1628.) The Court, for purposes of determining whether the Policies are subject to ERISA, takes no position as to whether the Policies are part of Combi's 125 plan.

ERISA purposes. So, even if Vasu is correct and "voluntary life insurance [fell] under the Premium Only benefit" (Doc. No. 41 at 1053), it is the characteristics of the *Policies themselves* that determine ERISA applicability, not whether they were part of the Premium Only Plan. And, for the same reasons outlined in the Court's order denying Vasu's motion to remand, the Court—again—finds that the Policies constitute an ERISA plan. (*See* Doc. No. 12.) Vasu's renewed motion to remand is denied.

### b. Vasu's ERISA Claims

As an alternative to remand, Vasu seeks "to recover benefits due to him under the terms of the [Policies] … in the amount of $135,000," pursuant to 29 U.S.C. § 1132(a)(1)(B). (FAC ¶ 17.) In addition, Vasu asserts, for the first time in his current motion, entitlement to damages pursuant to 29 U.S.C. § 1132(a)(3)—ERISA's catch-all provision. (*See* Doc. No. 41 at 1063–64.) The Court will address each of these claims in turn.

### i. ERISA Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B)

Combi is not the proper party for a claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B). It is well established that "[w]hen an insurance company administers claims for employee welfare benefit plans and has authority to grant or deny claims, the insurance company is a 'fiduciary' for ERISA purposes." *Moore*, 458 F.3d at 438 (citing *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. Of Ohio*, 982 F.2d 1031, 1035 (6th Cir. 1993)). An employer who does not exert control over the decision to deny benefits is not the proper party for a denial of benefits claim. *Id.*

Here, there is no doubt that AUL is the claims administrator for the Policies. (*See* Doc. No. 41 at 1057; Doc. No. 45 at 1631.) In its Application Agreement for the Policies, Combi agrees that only AUL "has authority to determine insurability, the effective date of insurance coverage, the

amount of insurance coverage, [and] to interpret and administer any of the requirements set forth in the [Policies] … [b]enefits under the [Policies] will be paid only if AUL decides in its discretion the applicant is entitled to them…." (AR at 751). Indeed, in *Vasu I*, Vasu unsuccessfully sued AUL to recover benefits under the Policies, thereby recognizing that AUL as the proper party-defendant for such a claim. Because Combi is not the proper party for a claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B), Combi is entitled to judgment on the administrative record on this claim.[6]

### ii. Equitable Relief Pursuant to 29 U.S.C § 1132(a)(3)

In his instant motion, Vasu asserts—for the first time—a theory of recovery pursuant to 29 U.S.C. § 1132(a)(3), which is ERISA's catchall provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996). But it is "well-settled that a plaintiff may not expand its claims to assert new theories in response to summary judgment…." *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013) (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007)). If a party seeks to add new claims at such a late stage, "the proper procedure … is to amend the complaint in accordance with Rule 15(a)." *Id.* (citing *Tucker v. Union of Needletrades*, 407 F.3d 784, 788 (6th Cir. 2005) (further citations omitted)). Allowing plaintiffs to assert new claims at the summary judgment stage "'subject[s] defendants to unfair surprise.'" *Id.* (quoting *Tucker*, 407 F.3d at 788). That is precisely what happened here.

On December 20, 2019, Combi filed its current motion for judgment on the administrative record on Vasu's first and third claims and for summary judgment on Vasu's fourth claim. (Doc.

---

[6] Vasu argues that AUL's "decision to deny [his] life insurance benefits was arbitrary and capricious…." (Doc. No. 41 at 1058.) But Vasu already litigated the merits of AUL's denial decision in *Vasu I*, and this Court determined that "AUL's denial of benefits was not arbitrary and capricious…." *See Vasu*, 247 F. Supp. 3d at 874.

No. 40.) Three days later, Vasu filed a cross motion for judgment on the administrative record and for summary judgment that included the previously unasserted fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(3). (Doc. No. 41 at 1063.) As such, Combi was unable to address Vasu's fiduciary duty claim in its summary judgment motion. (The Court notes that Vasu already amended his complaint once and, despite the fact that this is his second lawsuit based on the same factual predicate, failed to include a Section 1132(a)(3) claim.) Combi is entitled to summary judgment in its favor on this claim for this reason alone.

But even if the Court considered the claim on its merits,[7] Vasu would still not prevail. To this end, the Court issued an order on April 28, 2020 notifying Vasu that, because his Section 1132(a)(3) claim was first asserted after Combi filed its motion for summary judgment, the Court would construe Combi's response in opposition as seeking summary judgment on Vasu's § 1132(a)(3) claim. Vasu was given leave to file an opposition brief to address the 29 U.S.C. § 1132(a)(3) arguments made in Combi's opposition brief (*see* non-document order dated April 28, 2020), but he failed to do so.

When a party fails to oppose summary judgment, the Court is not required to conduct its own probing investigation of the record to discover an issue of material fact. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992). Nevertheless, the Court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* at 407. As such, the Court will consider Combi's opposition brief—construed as seeking summary judgment—to ensure Combi has met its burden and is entitled to judgment. *See Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (6th

---

[7] "[C]ourts prefer to decide cases on the merits whenever possible." *In re Wal-Mart ATM Fee Notice Litig.*, MDL No. 2:11-md-2234-JPM, 2013 WL 3776206, at *2 (W.D. Tenn. July 16, 2013) (citing *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 846 (6th Cir. 1983)).

Cir. 2013) (citing *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380–81 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his] burden.")).

Despite his failure to include it in his complaint, Vasu's breach of fiduciary duty argument appears to be the crux of his entire grievance as set out in his motion. Vasu points the Court to the Application Agreement between Combi and AUL, in which Combi agreed to "inform an [e]mployee, pursuant to the policy terms, of any right to continue or convert coverage and provide the necessary forms to the [e]mployee[.]" (AR at 751.) But the administrative record shows that AUL provided Victor Vasu with notice of his Conversion Privilege and notified Combi that they had done so.

Because the conversion forms are absent from the record, Vasu argues that Combi breached its duty to provide notice and conversion forms and seeks equitable relief under 29 U.S.C. § 1132(a)(3) "in the form of a surcharge in the amount of $135,000 against [Combi] for the monetary loss resulting from [Combi's] violation and breach of duty." (Doc. No. 41 at 1064.) Combi argues that Vasu's breach of fiduciary duty claim must fail because it is duplicative of his claim for benefits, and because Vasu does not cite to any admissible evidence showing that, had Combi, as opposed to AUL, "provided notice [and conversion forms] to Victor Vasu, … [he] would have exercised those rights…." (Doc. No. 45 at 1638.) It is the latter argument that entitles Combi to summary judgment on this claim.

Unlike § 1132(a)(1)(B), which allows a participant or beneficiary to bring a civil claim to "recover benefits due[,]" under an ERISA plan, § 1132(a)(3) permits a participant beneficiary or fiduciary to obtain "other appropriate equitable relief" to redress violations of the terms of an

ERISA plan. 29 U.S.C. § 1132(a)(3). As mentioned above, § 1132(a)(3) functions as a safety net allowing appropriate equitable relief for injuries that are not adequately remedied in other ERISA provisions. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015) (citing *Varity Corp.*, 516 U.S. at 513). Where a plaintiff has an adequate remedy under Section 1132(a)(1)(B), however, a plaintiff  "is not [also] entitled to relief under [Section 1132(a)(3),] the catchall provision…." *Id.* at 372. But when a "breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under § [1132](a)(1)(B) is otherwise shown to be inadequate[,]" a plaintiff can pursue a breach of fiduciary duty claim, even if his claim for benefits proves unsuccessful. *Id.* (emphasis in original).

In support of his breach of fiduciary duty claim, Vasu relies on *CIGNA Corp. v. Amara*, 563 U.S. 421, 444, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011), for the proposition that "an ERISA beneficiary seeking to be made whole through a money payment" can bring a claim under Section 1132(a)(3) because monetary payments can constitute "appropriate equitable relief" under the statute. (Doc. No. 41 at 1063.) In *Amara*, the Supreme Court clarified that the term "appropriate equitable relief in § [1132](a)(3) … refer[s] to those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity), were *typically* available in equity." *Amara*, 563 U.S. at 439 (citation and quotation marks omitted, emphasis in original). One of those traditional categories, the *Amara* Court said, was monetary recovery via a surcharge. *Id.* at 442. A surcharge allowed an equity court "to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty…." *Id.* at 441. But an ERISA fiduciary can only be surcharged upon plaintiff's showing of actual harm, proved by a preponderance of the evidence. *Id.* at 444. Thus, to obtain relief by surcharge—as Vasu seeks—a plan beneficiary must show that the alleged ERISA violation caused actual harm. *Id.*

16

Vasu alleges that his original insurance claim—for which he sought recovery in *Vasu I*—"was denied because the group life insurance was not converted to individual policies [and that] the conversion did not occur because [Combi] failed to fulfill its duty and responsibility to give the conversion form to [Victor] Vasu." (Doc. No. 47 at 1767.) But Combi points out that Victor Vasu did timely receive notice of his conversion rights from AUL and argues that Vasu cites to no evidence showing that "if [Combi]—rather than AUL—had provided notice to Victor Vasu of his conversion rights, [that he] would have exercised those rights…." (Doc. No. 45 at 1638.)

"[W]hen a summary judgment movant 'does not bear the ultimate burden of persuasion,' the movant need only assert 'the absence of a genuine factual issue,' with no need to point to admissible evidence." *Lansky v. Prot. One Alarm Monitoring, Inc.*, No. 17-2883, 2019 WL 575390, at *2 (W.D. Tenn. Feb. 12, 2019) (quoting *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1071–72 (6th Cir. 1993)). A summary judgment movant can "challenge the opposing party to 'put up or shut up' on a critical issue. After being afforded sufficient time for discovery … if the respondent d[oes] not 'put up,' summary judgment [is] proper." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Combi has pointed out the absence of a genuine factual issue on the material element of causation and actual harm.

There is no question that Victor Vasu did, in fact, receive notice of his Conversion Privilege. On December 24, 2013, AUL sent Victor Vasu a letter advising him that he did not qualify for the Waiver of Premium benefit due to his age, and further advising him, as follows:

> You may be eligible to exercise your Conversion, Portability or Continuation of Coverage privilege to maintain life insurance by paying premiums directly to AUL. These provisions are outlined in the group policy. Based on the terms stated in the group policy, if you are interested in pursuing these opportunities, you must return the enclosed Application to Continue/Port or Convert Group Insurance within 31 days of the date of this letter. If you have any questions regarding the Application to Continue/Port or Convert Group Insurance, please call [the following toll-free number] and choose the Request for Quote for Continuing Insurance Option.

17

(*Id.* at 584, 586–87.) That same day, AUL notified Combi that it denied Victor Vasu's Waiver of Premium benefits and "provided [Victor] Vasu a detailed letter of explanation, including appeal and conversion procedures." (AR at 589.)

At the summary judgment stage, Vasu can no longer rely on conclusory allegations, speculation, and unsubstantiated assertions. *See Gooden*, 67 F. App'x at 895. He must bring forward affirmative evidence to support his position. And Vasu has failed to put forth any evidence to show actual harm caused by Combi. In other words, he has "failed to present specific facts demonstrating how [Victor] would have acted differently[,]"*Damiano v. Inst. For In Vitro Scis.*, 799 F. App'x 186, 188 (4th Cir. 2020), had Combi provided the notice and conversion forms that AUL indicated that it provided to Victor Vasu, along with detailed instructions and contact information in the event he had questions. Because AUL provided Victor Vasu with the required notice, Vasu has failed to present any facts that Combi's failure to provide conversion forms *caused* his father's failure to exercise his Conversion Privilege. There is no evidence to suggest that Victor sought out the forms. Indeed, AUL's December 24, 2013 letter indicates that the conversion forms were "enclosed" yet there is no evidence to suggest that, if the forms were not enclosed, Victor contacted AUL at the provided toll-free number to request the forms. Instead, Vasu offers nothing but a conclusory allegation, which is insufficient at this stage. Under *Amara*, Vasu was required to put forth evidence that Combi's failure to provide conversion forms caused actual harm. He has failed to do so, and Combi is entitled to judgment on Vasu's 29 U.S.C. § 1132(a)(3) claim.

### c. Vasu's Declaratory Judgment Claim

In his third claim for relief, Vasu asks this Court "to declare that [he] is entitled to receive the amount of $135,000 that was lost as a … result of [Combi's] failure to comply with its

responsibilities under the [Policies]…." (FAC ¶ 21.) Combi seeks dismissal of Vasu's declaratory judgment claim, arguing that it is duplicative of his claim seeking ERISA benefits under 29 U.S.C. § 1132(a)(1)(B). (Doc. No. 40 at 861–62.) Vasu does not address his declaratory judgment claim in either his opposition to Combi's motion or in his summary judgment motion. (*See* Doc. Nos. 47, 41.)

The Declaratory Judgment Act provides federal courts with the discretion to "declare the rights and other legal relations of any interested party seeking such declaration…." 28 U.S.C. § 2201(a). But Courts routinely "dismiss[] declaratory judgment [claims] as redundant when the [declaratory judgment claim] would be rendered moot by the adjudication of corresponding claims in the complaint." *Hardiman v. McKeen*, No. 19-12949, 2020 WL 1821025, at *4 (E.D. Mich. Apr. 10, 2020) (citing *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402 405–06 (6th Cir. 2017)). Here, there is no doubt that Vasu's declaratory judgment claim is redundant of his ERISA claims. In his claim for ERISA benefits, Vasu seeks "to recover benefits due to him under the terms of the [Policies]" in the amount of $135,000. (FAC ¶ 17.) Likewise, in his declaratory judgment claim, Vasu seeks a declaration "that [he] is entitled to receive the amount of $135,000" under the Policies. (FAC ¶ 21.) Where, as here, a plaintiff's declaratory judgment claim and recovery of benefits claim under 29 U.S.C. § 1132(a)(1)(B) "are based on identical factual allegations, seek identical factual relief, and are therefore duplicative claims[, the claims] cannot be simultaneously asserted…." *Boyles v. Am. Heritage Life Ins. Co.*, No. 3:15-cv-274, 2016 WL 4031295, at *11 (W.D. Pa. July 26, 2016). Therefore, Vasu's declaratory judgment claim is dismissed.

### d.  Vasu's Failure to Furnish Documents Claim

Finally, Vasu asserts claims pursuant to 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1)(B) alleging that Combi failed to furnish copies of various documents related to the Policies upon

request and asks "the Court to exercise its discretion" to penalize Combi "$100 a day from the date of [its] failure or refusal [to provide the documents.]" (Doc. No. 41 at 1067.) Combi argues that it "timely provided the documents [Vasu] requested[.]" (Doc. No. 40 at 867.) Further, Combi argues that the documents that Vasu believes were not provided, do not exist—Vasu simply "assumes those documents exist because he incorrectly assumes that the [Policies are] part of the [Section] 125 plan." (Doc. No. 45 at 1638.) Finally, Combi asserts that, even assuming it failed to provide one or more requested documents, Vasu has failed to show he was prejudiced by Combi's failure to provide documents. (Doc. No. 40 at 868–69.) Vasu believes he was prejudiced because he was "denied the opportunity to review important and integral parts of the plan, which would have shed valuable light upon the issue of the applicability of ERISA and [Combi's] intent." (Doc. No. 47 at 1769.)

Section 1132(c)(1)(B) permits district courts, in their discretion, to impose penalties of up to $100 per day[8] if an ERISA administrator fails or refuses to provide certain plan-related documents upon written request of a plan participant or beneficiary. 29 U.S.C. § 1132(c)(1)(B). The administrator must provide the requested documents within 30 days. *Id.* The parties do not dispute that Combi was a plan administrator. They also agree that on May 12, 2017, Vasu's counsel requested "a complete copy" of several documents related to the Policies, including: (1) the complete employee welfare benefit plan, (2) the summary plan description, (3) all bargaining agreements, (4) all trust agreements, (5) all contracts, and (6) all other instruments and/or documents under which the plan was established and/or operated. (Doc. Nos. 40 at 867, 41 at 1065, 40-1 at 873.) On June 12, 2017—28 days after it received Vasu's request—Combi provided Vasu with a copy of the Voluntary Life policy, the Basic Life Benefit Plan, and the Basic Life Summary

---

[8] The maximum penalty has since increased to $110 per day.

Plan Description. (Doc. Nos. 40 at 867; 41 at 1065–66.) In the same correspondence, Combi stated it did "not believe there [were] any other documents regarding the Plan in [its] possession responsive to [Vasu's] request." (Doc. No. 40-2 at 877.)

In support of his argument that the requested documents were not provided, Vasu cites to the definition of "Plan" in Combi's Section 125 Basic Plan Document. (Doc. No. 41 at 1066.) That document defines "Plan" as "the Section 125 Plan … [and] includes all documents associated with this Plan, including the Adoption Agreement signed by the Employer, the Election Form/Compensation Reduction Agreement, any amendments to any such documents, and such uniformly applicable rules, regulations, and standards promulgated by the Employer…." (Doc. No. 42-1 at 1560.) Vasu claims these four groups of documents—(1) the Adoption Agreement, (2) the Election Form/Compensation Reduction Agreement, (3) any amendments to any such documents, and (4) the uniformly applicable rules, regulations, and standards promulgated by the employer (collectively, the "Non-Furnished Documents")—were not furnished and, thus, are the predicate for civil penalty under 29 U.S.C. 1132(c)(1)(B)[9]. (Doc. No. 41 at 1066.)

But as explained above, Section 125 plans are not necessarily synonymous with ERISA plans. Indeed, Combi cites to the affidavit of its Treasurer-Controller, Barbara Karch, who avers that "[t]he [Policies] and the 125 Plan are completely distinct plans. The [Policies are] not organized under the 125 Plan … [but, instead, constitute] a standalone employee welfare benefit plan." (Doc. No. 45-1 ["Karch Aff"] ¶ 4.) The Policies' "only governing document[s] [are] the group polic[ies] … issued by [AUL] to [Combi]." (*Id.*) "The 125 Plan's summary plan description

---

[9] Because Vasu specifically identifies these four groups of Non-Furnished Documents, the Court need not sift through the record to determine whether Combi failed to provide other requested information, or if other such requested information exists. *See Parsons v. FedEx Corp.*, 360 F. App'x 642, 646 (6th Cir. 2010) ("A district court need only consider the evidence presented to it when considering a motion for summary judgment, regardless of whether other potentially relevant evidence exists somewhere in the record.") (citation omitted).

… is inapplicable to the [Policies]." (*Id.* ¶ 5.) Vasu did not file a reply in response to Combi's opposition brief. Nor does Vasu cite to any record evidence to refute Combi's evidence suggesting that the Section 125 Plan and the Policies are entirely separate and, therefore, the definition of "Plan" in the Section 125 Basic Plan Document is inapplicable to the Policies. Nevertheless, the Court need not determine whether the alleged Non-Furnished Documents apply to the Policies because the Court has discretion to impose a civil penalty under 29 U.S.C. § 1132(c)(1)(B), and the Court declines to exercise that discretion.

In determining whether it should assess a penalty under § 1132(c)(1)(B), a district court considers such factors as the presence or absence of bad faith on the part of the plan administrator, prejudice to the party seeking the information, and the sheer number of plaintiffs affected. *Ciaramitaro v. Unum Life Ins. Co. of Am.*, 628 F. App'x 410, 417–18 (6th Cir. 2015). Here, only Vasu was affected, and Combi made a good-faith attempt to comply with Vasu's request. Within 28 days after receiving Vasu's letter, Combi's counsel provided certain requested documents and stated that Combi did "not believe there [were] any other documents regarding the [Policies] in their possession responsive to [Vasu's] request." (Doc. No. 40-2 at 877.) And even though Combi's counsel mistakenly believed that Voluntary Life "[was] not an ERISA Program[,]" she still enclosed a copy of the Voluntary Life policy. (*Id.*) Combi's counsel invited Vasu's counsel to contact her if she "[could] be of any further assistance…." (*Id.*) There is nothing in the record to suggest that Vasu's counsel ever sought additional documents. (*See* Doc. No. 40 at 859–60.) To the extent Combi failed to turn over the Non-Furnished Documents, there is no evidence to suggest it acted in bad faith or that the documents were even relevant.

Further, Vasu's argument that he was prejudiced because the Non-Furnished Documents "would have enabled him to verify or dispute that the plan fell under ERISA[,]" (Doc. No. 41 at

1067) is unavailing. Vasu does not specify which of the Non-Furnished Documents would have provided him with such information. Indeed, this Court has twice been able to determine that the Policies are subject to ERISA without reviewing the Non-Furnished Documents, and there is no evidence to suggest the documents exist or apply to the Policies. This is not a case where Vasu requested documents to ensure he knew exactly where he stood with regard to the Policies. *See Bruch*, 489 U.S. at 118 ("Congress' purpose in enacting the ERISA disclosure provisions" was to "ensur[e] that the individual participant knows exactly where he stands with respect to the plan[.]") (citation and internal quotation marks omitted); *Minadeo v. ICI Paints*, 398 F.3d 751, 758 (6th Cir. 2005) ("ERISA disclosure requirements exist to help ensure that participants have access to information about their pension plans.") Instead, Vasu simply pronounces (without citing any evidence) that the Non-Furnished Documents may have helped him during this litigation. (Doc. No. 41 at 1067.) But Vasu had copies of the Policies even before he requested them from Combi, based on his previous lawsuit against AUL. Vasu has now litigated two cases through the summary judgment stage based on the same set of predicate facts, and he has failed to show that: (1) the Non-Furnished Documents exist and relate to the Policies, (2) that Combi acted in bad faith, or (3) that he was prejudiced. Taken together, the Court finds that a civil penalty pursuant to 29 U.S.C. § 1132(c)(1)(B) is unwarranted.

23

IV.     CONCLUSION

For all of the foregoing reasons, defendant's motion for judgment on the administrative record and for summary judgment (Doc. No. 40) is GRANTED, and plaintiff's motion for judgment on the administrative record and for summary judgment (Doc. No. 41) is DENIED. This case is closed.

**IT IS SO ORDERED**.

Dated: May 25, 2020

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**